IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL DREHER,                          :

    Plaintiff,                      :

v.                                    :      Civil Action No. GLR-17-3832

STATE OF MARYLAND, et al.,            :

    Defendants.                    :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Anne Arundel County, Maryland's (the "County") Motion to Dismiss First Amended Complaint (ECF No. 8) and Defendant State of Maryland's (the "State") Motion to Dismiss (ECF No. 10). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will deny the Motions.

### I.    BACKGROUND[1]

Plaintiff Paul Dreher began working for the State of Maryland in 2002 as a payroll clerk in the Anne Arundel County Department of Health (the "Department of Health" or the "Department"). (1st Am. Compl. ¶ 13, ECF No. 5). Both State and County employees work in the Department of Health; the County nominates the Department's chief executive—the health officer—and the State appoints her. (Id. ¶¶ 4, 5). In 2009, Dreher was promoted to fiscal accounts clerk supervisor. (Id. ¶ 13). In that role, Dreher managed

---

[1] Unless otherwise noted, the Court takes the following facts from Dreher's First Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

payroll operations for State and County employees who worked for the Department of Health. (Id. ¶ 15).

From 2012 to November 2016, Dreher's immediate supervisor was payroll supervisor Blair Schiro, a County employee. (Id. ¶ 16). On July 24, 2015, Schiro told Dreher that his "people" had a "pride problem" and that they "do not listen." (Id. ¶ 18). Dreher, who is African-American, understood these remarks from Schiro, who is Caucasian, to relate to his race. (Id. ¶¶ 12, 16, 18).

Over the course of several months in 2015 and 2016, Dreher reported Schiro's remarks and his concerns about the work environment to four managers at the Department of Health, all of whom were State employees. (Id. ¶¶ 19, 23–24). In September 2015, Dreher reported Schiro's remarks to Shelley English, then-Director of Human Resources at the Department of Health. (Id. ¶ 19). Dreher said if the environment at work did not change, he would feel compelled to resign from his job. (Id.). Instead of taking remedial action, English asked Dreher when his last day of work would be. (Id. ¶¶ 20–21). On September 30, 2015, Dreher submitted a written complaint about the office environment to Rae Miller, the Deputy Director of Human Resources at the Department of Health. (Id. ¶¶ 17, 22). A year later, in September or October of 2016, Dreher told Tim Laureska, the Deputy Health Officer in the Department of Health, about Schiro's remarks, the office environment, and the disparate treatment of African-American employees at the Department of Health. (Id. ¶ 23). Shortly thereafter, Dreher also complained to Health Officer Dr. Jinlene Chan, the Department of Health's chief executive. (Id. ¶ 24). Dreher's complaints did not result in remedial action. (Id. ¶¶ 22,

24). English, Miller, and Laureska are Caucasian; the First Amended Complaint does not specify Dr. Chan's race. (Id. ¶¶ 17, 19, 23–25).

On November 15 and 22, 2016, the Human Resources Director for the Department of Health, Grace Jibril, disciplined Dreher for making incorrect entries on his time sheets.[2] (Id. ¶ 25). Dreher explained to Jibril that his supervisor, Schiro, had told him to complete his time sheets that way. (Id.). On or about December 2, 2016, Dreher was terminated as a result of the time-sheet errors. (Id. ¶ 27). Caucasian employees who worked in the Department of Health, including Sharron Ward and Norman Pennington, made time sheet errors like Dreher but were not terminated. (Id. ¶ 28).

On November 30, 2016, Dreher filed a Charge of Discrimination against the Department of Health with the Maryland Commission on Civil Rights ("MCCR") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination and retaliation. (Id. ¶¶ 8–9). On January 19, 2017, the EEOC served the Charge of Discrimination on the Department of Health. (Id. ¶ 9). On April 4, 2017, the MCCR held a fact-finding conference, which Laureska, Jibril, and an unnamed County employee attended. (Id. ¶ 10). On July 12, 2017, the EEOC notified the Department of Health that Dreher's attorney had requested a Notice of Right to Sue and that Dreher would have ninety days from receipt of a Notice of Right to Sue to file suit in federal court. (Compl. ¶ 8, ECF No. 1). On Oct. 4, 2017, Dreher received his Notice of Right to Sue. (1st Am. Compl. ¶ 11).

---

[2] The First Amended Complaint also does not specify Jibril's race.

On December 29, 2017, Dreher sued the County. (ECF No. 1). On February 26, 2018, Dreher filed a First Amended Complaint, adding the State as a Defendant and naming it as his employer, as well as other related facts.[3] (ECF No. 5). In his four-Count First Amended Complaint, Dreher alleges: (1) Defendants discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (2018) (Count 1); (2) Defendants retaliated against him for complaining of discrimination and a hostile work environment in violation of Title VII (Count 2); (3) Defendants discriminated against him on the basis of his race in violation of the Maryland Fair Employment Practices Act (the "MFEPA"), Md. Code Ann., State Gov't ["SG"] §§ 20-606 et seq. (West 2018) (Count 3); and (4) Defendants retaliated against him for complaining of discrimination and a hostile work environment in violation of the MFEPA (Count 4). (See id. ¶¶ 30–77). Dreher seeks compensatory damages, back pay and interest on the damages, equitable relief, including a clean personnel record, and attorney's fees and costs. (Id. at 13).

On March 12, 2018, the County filed its Motion to Dismiss First Amended Complaint. (ECF No. 8). On March 20, 2018, the State filed its Motion to Dismiss. (ECF No. 10). Dreher filed his Opposition to the County's Motion on April 9, 2018, (ECF No. 15), and his Opposition to the State's Motion on April 17, 2018, (ECF No. 17). The

---

[3] On February 12, 2018, the County filed its first Motion to Dismiss or, in the Alternative, for Summary Judgment, arguing that it was not Dreher's employer, and therefore not liable. (ECF No. 3-1). Two weeks later, Dreher filed his First Amended Complaint, addressing the County's argument by adding the State as a Defendant. (ECF No. 5). On April 4, 2018, in light of Dreher's First Amended Complaint, the Court denied the County's Motion without prejudice. (April 4, 2018 Order, ECF No. 14).

4

County filed its Reply on April 30, 2018. (ECF No. 20). The State filed its Reply on May 1, 2018. (ECF No. 21).

## II. DISCUSSION

### A. Standard of Review

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.    Analysis**

    **1.    The County's Motion**

The County maintains that it was not Dreher's employer, and therefore the Court should dismiss Dreher's claims against it. Specifically, the County argues that even if Dreher's direct supervisor, a County employee, made the comments as alleged, the people Dreher complained to—the same people who eventually terminated him—were State employees. As a result, the County argues Dreher was a State, not a County, employee. The Court disagrees.

Under Title VII, a party is liable for discrimination "only if it is an 'employer' of the complainant."[4] Butler v. Drive Auto. Indus. of America, Inc., 793 F.3d 404, 408 (4th

---

[4] MFEPA is the state-law analogue of Title VII, and federal cases interpreting Title VII guide the interpretation of MFEPA. Finkle v. Howard Cty., 12 F.Supp.3d 780, 784 (D.Md. 2014) (citing Haas v. Lockheed Martin Corp., 914 A.2d 735, 742 (Md. 2007)). Therefore, the Court's analysis of Dreher's Title VII claims shall constitute its analysis of his MFEPA claims. See, e.g., Linton v. Johns Hopkins Univ. Applied Physics

Cir. 2015). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees," 42 U.S.C. § 2000e(b) (2018), and that definition includes state and local governments, see 42 U.S.C. § 2000e(a).

The joint employment doctrine allows an employee to have multiple employers for the purposes of Title VII. Butler, 793 F.3d at 406. The doctrine "prevents those who effectively employ a worker from evading liability by hiding behind another entity." Id. at 410. To determine whether an employee has multiple employers, the Court applies a nine-factor "hybrid test." Id. at 414. Although none of the test's nine factors is dispositive, the first three factors are the most important and weigh heavily in the analysis. Id. at 414–415 (citing Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 260 (4th Cir. 1997)). Those three factors are: (1) [who has] authority to hire and fire the individual; (2) [who has] day-to-day supervision of the individual, including employee discipline; and (3) whether the putative employer furnishes the equipment used and the place of work.[5] Id. at 414. The alleged employer's control over the employee is the "principal guidepost." Id. (citing Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003)).

---

Lab., No. JKB-10-276, 2011 WL 4549177, at *4 (D.Md. Sept. 28, 2011) (applying Title VII case law to MFEPA claims).

[5] The other six factors are: (4) [who has] possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; (5) the length of time during which the individual has worked for the putative employer; (6) whether the putative employer provides the individual with formal or informal training; (7) whether the individual's duties are akin to a regular employee's duties; (8) whether the individual is assigned solely to the putative employer; and (9) whether the individual and putative employer intended to enter into an employment relationship. Butler, 793 F.3d at 414.

7

In addition to the factors, the Court bears in mind that "'Title VII should be liberally construed in light of its remedial purpose,' and that this broad interpretation extends to the definition of 'employer.'" Evans v. Md. State Highway Admin., No. JKB-18-935, 2018 WL 4733159, at *6 (D.Md. Oct. 2, 2018) (quoting Lee v. Mattis, No. PX-17-2836, 2018 WL 3439261, at *9 (D.Md. July 17, 2018)).

In Butler, the U.S. Court of Appeals for the Fourth Circuit held that a manufacturer was a joint employer of the plaintiff-employee because it provided day-to-day supervision. Id. at 415. While a staffing agency "disbursed [the employee's] paychecks, officially terminated [the employee], and handled employee discipline," this "did not prevent [the manufacturer] from having a substantial degree of control over the circumstances of . . . employment." Id.

Here, applying the hybrid test, Dreher plausibly alleges that the County and the State were his joint employers. Of the first three factors, two weigh in favor of the conclusion that the County was Dreher's joint employer. With regard to the second factor—day-to-day supervision, including discipline—Schiro, a County employee, supervised Dreher for all but one month of his last four years at the Department.[6] (1st Am. Compl. ¶ 16). Jibril, a State employee, disciplined Dreher, but Dreher clearly identifies Schiro as his immediate supervisor, a position of control. (Id. ¶¶ 16, 25). Indeed, Schiro instructed Dreher on how to complete his time sheets. (Id. ¶ 25). This factor distinguishes Dreher's circumstance from cases in which our sister district courts

---

[6] The First Amended Complaint does not specify who supervised Dreher before or after Schiro. (See 1st Am. Compl. ¶¶ 13–17).

8

in Virginia have concluded that local government entities were not joint employers with the state government, in part, because they did not exercise control over key employment functions. See Ross v. Cty. of Franklin, No. 7:14-CV-0051, 2015 WL 7308678, at *4 (W.D.Va. Nov. 19, 2015) (concluding that a county was not a joint employer with the Commonwealth of Virginia because the county did not "not hire, train, or supervise . . . employees"); Robinson v. City of Alexandria, No. 1:16-CV-00855-GBL-JFA, 2016 WL 8735621, at *4 (E.D.Va. Dec. 2, 2016) (holding that the city was not a joint employer with the state health department because the city neither had authority to hire or fire, nor supervised the employee on a daily basis). The third factor—who "furnishes the equipment used and place of work"—also weighs in favor of a joint-employer conclusion because Dreher performed payroll work for and alongside State and County employees, (1st Am. Compl. ¶¶ 3–5, 13). See Butler, 793 F.3d at 406, 415.

The first factor—authority to hire and fire—weighs in the other direction but not so much as to outweigh the other principal factors. The State, not the County, hired Dreher. (1st Am. Compl. ¶ 13). Dreher's First Amended Complaint implies he was terminated as part of a State disciplinary process, (id. ¶ 27), and, as the County notes, state law authorizes Chan to appoint the staff of the Department of Health, (Def. Cty.'s Mot. Dismiss [Cty.'s Mot.] at 5 n.3). See Md. Code Ann., Health-Gen., § 3-306(c)(2) (West 2018). The First Amended Complaint does not state, however, who specifically terminated Dreher, nor does it state whether his supervisor, Schiro, a County employee, recommended that the State terminate Dreher's employment. At this stage, therefore, while the State's formal hiring-and-firing role suggests it was Dreher's sole employer, the

9

other two factors—day-to-day supervision and furnishing equipment and the place of employment—tip the scale in favor of a joint-employer determination.

The remaining factors either support that conclusion or do not have enough factual support at this stage of the case to weigh one way or the other. With regard to factors five through eight, Dreher worked in the Department of Health, directly under a County supervisor and among County employees, for the several years leading up to the alleged discrimination and termination; Schiro trained him, including, crucially, in the erroneous time-sheet technique that led to his termination. (1st Am. Compl. ¶¶ 25, 27); and Dreher worked regularly and directly with County employees, supporting the core functions of the Department of Health and no other entity, see Butler, 793 F.3d at 414–15. With regard to the fourth and ninth factors, it is not clear at this point who had possession of or responsibility for Dreher's employment records and whether Dreher and the County intended to enter an employment relationship. But, as noted above, the joint employment doctrine exists to target entities who "effectively" employ plaintiffs, not those which intentionally employ them. Id. at 410. In this case, because Dreher's supervisor was a County employee, and he worked in an office with and processed payroll for County employees, Dreher plausibly alleges that the County was effectively his employer.

In sum, the facts alleged in the First Amended Complaint, viewed in the light most favorable to Dreher, permit the Court to plausibly infer that the County was Dreher's joint employer. Accordingly, the Court will deny the County's Motion.

### 2. The State's Motion

The State argues that the Court should dismiss Dreher's First Amended Complaint because: (1) his claims are time-barred; and (2) the State is immune from MFEPA claims under the Eleventh Amendment to the U.S. Constitution. The Court is not persuaded by either argument.

#### a. Ninety-Day Limitations Period

The State argues that the Fourth Circuit strictly enforces the ninety-day limitations period for filing suit, and that because Dreher amended his Complaint to add the State as a Defendant 146 days after he received his Right to Sue Letter, his claims against the State are time-barred. Dreher counters that his amendments relate back to the original Complaint, and therefore are timely and proper. The Court agrees with Dreher.

Rule 15(c) permits a party to amend his pleading after the expiration of the statute of limitations if the amendment relates back to the original pleading. Under Rule 15(c)(1)(C), when an amendment "changes the party or the naming of the party against whom a claim is asserted," the amended pleading relates back to the date of the original pleading if: (1) the claims "arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading"; and (2) "if, within the [ninety-day] period . . . for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

The Fourth Circuit has held that adding a defendant as part of an amended complaint constitutes a "change" of party or the naming of a party for purposes of Rule 15(c)(1)(C). Goodman v. Praxair, Inc. 494 F.3d 458, 468 (4th Cir. 2007) (en banc) (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1498 (2d ed. 1990)).

The Supreme Court clarified the requirements of Rule 15(c)(1)(C)(ii) in Krupski v. Costa Crociere S. p. A., 560 U.S. 538 (2010). A district court should focus its inquiry on "the defendant's understanding of whether the plaintiff made a mistake[,]" which encompasses every type of mistake, including "[a]n error, misconception, or misunderstanding." Id. at 548 (alteration in original) (internal quotation marks omitted) (quoting Mistake, Black's Law Dictionary (9th ed. 2009)). In other words, what the filing party knew or should have known is not relevant to 15(c)(1)(C), nor is the reasonableness of his mistake; only what the adverse party knew or should have known is relevant. Id. at 548–49. Where the filing party knew that there were multiple potential defendants and mistakenly chose the wrong defendant, that mistake does not foreclose amendment under relation back. Id. at 549.

In determining whether an amendment adding a party relates back, the Court considers "whether the rights of the new party, grounded in the statute of limitations, will be harmed if that party is brought into the litigation." Goodman, 494 F.3d at 471. "When that party has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back." Id.

12

In this case, Dreher's amendment relates back to his original Complaint because it meets the requirements of Rule 15(c)(1)(C). First, the amendment "changes" the party or the naming of the party against whom the claim is asserted; Dreher does not add any new claims. Dreher simply added the State as a defendant to his First Amended Complaint, which qualifies under Rule 15(c)(1)(C). Goodman, 494 F.3d at 468

Second, Dreher's amendment asserts claims against the State that arise out of the conduct, transaction, or occurrence described in his Complaint. In both the Complaint and the First Amended Complaint, Dreher's claims stem from the same sequence of events: Schiro's remarks, his complaints which State employees failed to address, and his eventual termination. The First Amended Complaint clarifies that the Department of Health is a State agency; the amendments do not assert new or different conduct, transactions, or occurrences against the State.

Third, Dreher satisfies the notice and knowledge requirements of Rule 15(c)(1)(C). According to the plain language of Rule 15(c)(1)(C), the timeframe in which the party to be brought in by amendment—here, the State—must have notice and knowledge of the action "within the period provided by Rule 4(m) for serving the summons and complaint." The new party must have "fair notice of a claim <u>within the limitations period</u>." Goodman, 494 F.3d at 471. Here, the State had both types of requisite notice and knowledge within the limitations period. With regard to notice, per Rule 15(c)(1)(C)(i), the State received timely notice of Dreher's suit against the County such that the State would not be prejudiced in defending on the merits. In its Reply brief, the State admits it learned of Dreher's Complaint against the County on January 19,

2018, less than a month after Dreher filed suit and well within the ninety-day period prescribed in Rule 4(m). (State's Reply at 6, ECF No. 21). Moreover, the State filed its Motion on March 20, 2018, which is also within ninety days of Dreher filing his Complaint against the County. The State, therefore, must have had notice of the Complaint in order to file its Motion.

Further, the State knew or should have known that it was an appropriate efendant in this case, as Rule 15(c)(1)(C)(ii) requires. On January 19, 2017, more than a year before Dreher sued the State, the EEOC served Dreher's Charge of Discrimination on the Department of Health, a State agency—specifically, on Jibril, a State employee. (Pl.'s Opp'n Ex. A at 4, ECF 17-1). Then, on July 12, 2017, the EEOC notified the Department of Health that Dreher's attorney had requested a Right to Sue Letter. The EEOC correspondence informed the State that one of its employees was seeking to sue his employer. Therefore, when the State learned of Dreher's suit against the County on January 19, 2018, it should have known that the suit would have been brought against it, but for Dreher's mistake. See Krupski, 560 U.S. at 549.

The State also had "fair notice of a claim within the limitations period." Goodman, 494 F.3d at 471. The Department of Health's receipt of Dreher's Charge of Discrimination in January 2017, followed by the July 2017 notification that Dreher's attorney had requested a Right to Sue Letter, gave the State fair notice of a claim-in-progress. When Dreher received his Right to Sue Letter on October 4, 2017, which started the running of the limitations period, the State, therefore, had notice. As a result, the State had fair notice of Dreher's claim within the limitations period.

Nevertheless, the State contends it will be prejudiced if it cannot assert a statute of limitations defense. The State argues Wilkins v. Montgomery, 751 F.3d 214, 224 (4th Cir. 2014), should dicate the result here. In Wilkins, the Fourth Circuit held an amendment seeking to add two new defendants who first received notice of the complaint eight and ten months after it was filed did not relate back. But Wilkins is distinguishable from this case for at least two reasons. First, the Fourth Circuit in Wilkins was reviewing a grant of summary judgment, see Wilkins 751 F.3d at 226, not a motion to dismiss. Here, the Court must accept the truth of Dreher's plausible allegations and draw all reasonable inferences in his favor. Second, unlike the Wilkins defendants, the State had notice of a claim before the limitations period began to run, as well as notice of the Complaint, well within Rule 4(m)'s ninety-day period.

The State also points to a pair of older decisions from other circuits that suggest a defendant in the State's circumstances would suffer prejudice. The Seventh Circuit in Norton v. Int'l Harvester Co. held that "prejudice within the meaning of [Rule 15] is prima facially established where a party named as an additional defendant in the amended complaint is deprived of the defense of the statute of limitations." 627 F.2d 18, 20 (7th Cir. 1980). In Hageman v. Signal L.P. Gas, Inc., the Sixth Circuit held that "an amendment adding another party is a new cause of action which cannot be added after the time limitation has expired." 486 F.2d 479, 484 (6th Cir. 1973). But those circuit courts interpreted the relevant section of Rule 15 before it materially changed. The 1991 revision replaced "within the period provided by law for commencing the action," Fed.R.Civ.P. 15(c) (amended 1966), with "within the period provided by Rule 4(m) for

serving the summons and complaint," Fed.R.Civ.P. 15(c) (amended 1991). See Advisory Committee Notes to Fed.R.Civ.P. 15. The Advisory Committee on Civil Rules (the "Committee") made the revision to "change the result" in Schiavone v. Fortune, 477 U.S. 21 (1986), in which the U.S. Supreme Court held that an amendment substituting a magazine publisher for its publictation after limitations period had expired did not relate back. Id. at 29. The Committee's goal in revising Rule 15(c)(1) was "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." Advisory Committee Notes to Fed.R.Civ.P. 15.

The Court acknowledges that Dreher did not sue the State within the ninety-day period and that the State, therefore, might have felt insulated from suit. But the purpose of relation-back, as the Supreme Court stated in Krupski, is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." 560 U.S. at 550. In this context, the Krupski Court explained, "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." Id. The language of Rule 15 and the policy considerations underlying statutes of limitations, therefore, allow Dreher's amendment to relate back here. Further, the State has not identified any other possible prejudice, and the Court does not see any.

In sum, the State had notice of Dreher's claim and his Complaint within both the statute of limitations and the ninety-day Rule 4(m) period; the State knew or should have known during both timeframes that it would be a Defendant in this case but for Dreher's mistake concerning the identity of his employer; and Dreher's amendment simply changes the party against whom he asserts the same basic claims alleged in the Complaint.

The Court, therefore, concludes that Dreher's addition of the State as a Defendant in his First Amended Complaint relates back to the original Complaint under Rule 15(c)(1)(C) and is not time-barred. As a result, the Court will deny the State's Motion on this basis.

### b. Eleventh Amendment Immunity

The State argues the Eleventh Amendment immunizes it from Dreher's MFEPA claims because it has not consented to suit in federal court for violations of state employment law. The Court disagrees.

The Eleventh Amendment shields states from suits brought in federal court by their citizens or citizens of other states. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Davenport v. Maryland, 38 F.Supp.3d 679, 690 (D.Md. 2014). A state may waive its immunity, either expressly or "by such overwhelming implication from [a] text as [to] leave no room for any other reasonable construction." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 240 (1985).

The MFEPA states that "[t]he State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case

under this title." SG § 20-903. Despite this unqualified language, the State argues this waiver only applies to proceedings in Maryland courts. The State cites the State Government Article's venue clause, which provides: "[a] civil action under this section shall be filed in the circuit court for the county where the alleged unlawful employment practice occurred." SG § 20-1013(b). The State is mistaken.

This Court has interpreted SG § 20-903 as a waiver of state sovereign immunity for MFEPA claims in both state and federal court. See Davenport, 38 F.Supp.3d at 690–91; Hartman v. Univ. of Md. at Balt., No. ELH-10-2041, 2013 WL 6858854, at *4 (D.Md. Dec. 20, 2013). Further, the Hartman court concluded that SG § 20-1013(b), "is best read not as creating a jurisdictional bar to federal court adjudication of cases under [the MFEPA], but rather as establishing the proper venue for [MFEPA] cases filed in state court." Id. Thus, Dreher's choice of venue has no effect on MFEPA's waiver of sovereign immunity. The Court, therefore, concludes that the State is not entitled to sovereign immunity with respect to Dreher's MFEPA claims. As a result, the Court will deny the State's Motion on this basis.

In sum, the Court will not dismiss Dreher's claims against the State. Accordingly, the Court will deny the State's Motion.

## III. CONCLUSION

For the foregoing reasons, the Court will deny the County's Motion to Dismiss First Amended Complaint (ECF No. 8) and the State's Motion to Dismiss (ECF No. 10). A separate Order follows.

Entered this 11th day of February, 2019.

/s/
George L. Russell, III
United States District Judge